IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2010

**STATE OF TENNESSEE v. JOHN W. COUCH**

**Appeal from the Circuit Court for Franklin County**
**No. 18283     Thomas W. Graham, Judge**

_____

**No. M2009-01830-CCA-R3-CD - Filed June 2, 2010**

_____

Appellant, John W. Couch, was indicted by the Franklin County Grand Jury for one count of cruelty to animals. After a guilty plea, Appellant was sentenced by the trial court to eleven months and twenty-nine days for the Class A misdemeanor. The trial court ordered Appellant to spend forty-five days in incarceration and the balance of the sentence on supervised probation "until all requirements [are] met." The trial court also required Appellant to pay a $1,000 fine and perform 50 hours of community service as part of his sentence. The trial court denied a motion for new trial and/or reduction of sentence. Appellant appeals, arguing that he was improperly sentenced. After a review of the record, we affirm the judgment of the trial court. However, the matter is remanded to the trial court for entry of a corrected judgment to reflect Appellant's eligibility for work release.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and ROBERT W. WEDEMEYER, JJ, JOINED.

Robert S. Peters, Winchester, Tennessee, for the appellant, John W. Couch.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; J. Michael Taylor, District Attorney General, and William Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

Appellant was indicted for cruelty to animals by the Franklin County Grand Jury in September of 2008. Appellant pled guilty on April 6, 2009. At the plea acceptance hearing, counsel for the State informed the trial court that the facts underlying the plea consisted of the following:

> Officer Hindman had received information that [Appellant] had livestock that had not been fed properly, and was [sic] doing poorly. Mr. Hindman and Mr. Ferrell went out to JK Lane and looked at the cattle and of the 22, 11 were severely malnourished. There was no food, very little water, and [the State believes] they rated the cattle on a one - on a scale of zero to ten, ten being the best, zero being dead.

As part of the plea agreement, Appellant agreed to get rid of the cattle before May 1, 2009. Appellant also agreed that he would not own any more cattle until he completed a course in raising and managing cattle. The trial court accepted the plea and set the matter for a sentencing hearing.

At the sentencing hearing, Officer Todd Hindman of the Franklin County Sheriff's Department testified. According to Officer Hindman, all of the cattle were still on the property on the date of the sentencing hearing. Officer Hindman informed the trial court that during the initial investigation, there were several dead cattle on the property. He identified several photographs both from the initial investigation and from the morning of the sentencing hearing. Officer Hindman stated that there were a similar number of cattle on the property the day of the sentencing hearing and the day of the initial investigation.

Appellant testified at the sentencing hearing that he stopped feeding his cattle because he and his wife "kind of split up" and she "stole [his] slop truck title." The "slop" referred to by Appellant is a grain-based by-product of the distilling process at the Jack Daniel's distillery. Cattle farmers purchase the slop to feed to cattle. The slop helps the cattle gain weight.

Appellant admitted that he agreed to get rid of the cattle but that two of the cattle died after his initial court appearance. Appellant informed the trial court that he did not own the land where the cattle were housed. The land was owned by Appellant's father and grandfather. Appellant testified that he sold the cattle for $10,000 to Danny Stewart on April

28 or 29, 2009. Mr. Stewart gave Appellant $1,000 down and intended to pay Appellant $9,000 after the cattle were sold. Mr. Stewart planned on keeping the cattle on the property because there were already feed troughs located on the property. Appellant claimed that he took no part in feeding or maintaining the cattle after Mr. Stewart purchased them.

Mr. Stewart informed the trial court that he had been in the cattle business for thirty-five to forty years. Slop comprises about 90% of the feed supply for Mr. Stewart's cattle. Mr. Stewart did not want to move the cattle that he purchased from Appellant because they were too thin and needed to gain weight. After one month in Mr. Stewart's care, the cattle had gained nearly 100 pounds a head. Mr. Stewart insisted that he owned the cattle and that there was no agreement to return the cows to Appellant at any time.

At the conclusion of the hearing, the trial court stated:

[L]ooking at the enhancing and mitigating factors, . . . .

I do find in this case that the factor involving a previous criminal record applies . . . . [S]o he's got at least three Class A misdemeanors on his record so that means he certainly should not get the minimum sentence of any kind.

Also the - - it seems obvious that the - - that the animals themselves suffered and to the extent that victim impact has a play in here. The victims, normally we think of as human, but I've heard it argued that animals are also victims in these cases, and I think something should be found from that. As far as his, you know, amenability to corrections and so forth is some question there because it took him all this time to get this thing stopped even though he was charged and apparently in sessions court. Appeals up here, and I don't know how these animals ever got fed because the - - his excuse is that he couldn't use the truck since his girlfriend left him. Well, that hadn't changed, so I guess they didn't get fed anything from the first notice they were having problems until they were sold to Mr. Stewart, which has just been two weeks ago, three weeks ago . . . .

Anyway, I think he should be enhanced based on past record and also the facts in this case, lack of attention to these animals and so forth. So his sentence ought to be 11 months and 29 days. He doesn't have to serve all that time, but he needs to serve some time to kind of straighten his attitude out. So I'm going to impose a 45 day sentence.

. . . .

And then also this is a, you know, I think a fine is appropriate in this case, so I'm going to fine $1000.00, which he ought to have 'cause he just got a down payment of $1000.00. He's still going to make some money off these cattle.

. . . .

[G]ive him 50 hours of public service work.

Appellant filed a motion for new trial and for reduction of sentence on June 30, 2009. The trial court denied the motions, however, during the hearing the trial court orally modified Appellant's sentence to include immediate work-release status. The transcript reflects that Appellant is eligible for work release during the period of Monday through Friday from 8:00 a.m. to 4:00 p.m. No amended judgment appears in the technical record. Appellant filed a notice of appeal on August 31, 2009.

*Analysis*
*Notice of Appeal*

Initially, we will address the State's cursory statement that Appellant's notice of appeal was untimely.[1] Judgments of conviction were entered on June 1, 2009. Appellant filed a motion for new trial and motion for reduction of sentence on June 30, 2009. Following the denial of the motion for new trial, Appellant filed a notice of appeal on August 31, 2009. We conclude that the August 31, 2009, notice of appeal was untimely. *See* Tenn. R. App. P. 4(a) (mandating that a notice of appeal to this Court shall be filed "within 30 days after the date of entry of the judgment appealed from . . . ."). Although the defendant filed a motion for reduction of sentence and motion for new trial within thirty days of the entry of the judgment, such a motion does not toll the time period for filing a notice of appeal in this Court. *See* Tenn. R. App. P. 4(c) ("In a criminal action, if a timely motion or petition under the Tennessee Rules of Criminal Procedure is filed in the trial court by the defendant: (1) under Rule 29(c) for a judgment of acquittal; (2) under Rule 32(a) for a suspended sentence;

---

[1] The State makes this statement in its "Statement of the Case" section of its brief and neglects to address the issue in the argument section of the brief.

-4-

(3) under Rule 32(f) for withdrawal of a plea of guilty; (4) under Rule 33(a) for a new trial;[2] or (5) under Rule 34 for arrest of judgment, the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition.").  However, "[n]otwithstanding any other provision of law or rule of court to the contrary, in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interests of justice."  T.C.A. § 27-1-123; *see also* Tenn. R. App. P. 4.  The tardiness of the notice is de minimis and the State has suffered no prejudice.  We determine that the interest of justice warrants waiver of the timely filing of the notice of appeal.

*Sentencing*

Appellant argues that the trial court should have granted full probation because he "has established his suitability for full probation and has complied with the condition set out in the guilty plea document and which was discussed in open court."  Further, Appellant argues that a sentence of confinement is "patently unreasonable since [sic] the trial court's purported justification for confinement is inadequate and unjustified given the facts of this case and the conduct of [Appellant] following his guilty plea."  The State disagrees, countering that a sentence of forty-five days in incarceration was consistent with sentencing principles and that Appellant failed to show that he is entitled to full probation.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues.  Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct."  T.C.A. § 40-35-401(d).  "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).  In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements.  T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169.  We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper."  *Ashby*, 823 S.W.2d at 169.

---

[2] A motion for new trial is not an appropriate motion to file following the entry of a guilty plea.  *State v. Quincy Alexander Norman*, No. W2003-00635-CCA-R3-CD, 2004 WL 1773435, at *2 n.2 (citing *State v. McClintock*, 732 S.W.2d 268, 271 (Tenn. 1987)).

Further, misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *See* T.C.A. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. *See State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. T.C.A. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. T.C.A. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. T.C.A. § 40-35-302(d).

The Tennessee Supreme Court has stated that in misdemeanor sentencing the trial court did need not make specific findings of fact on the record, so long as it appears the trial judge considered the principles of sentencing in the code and applicable enhancement or mitigating factors. T.C.A. § 40-35-302(d); *Troutman*, 979 S.W.2d at 274; *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). The defendant has the burden of establishing suitability for full probation. *Troutman*, 979 S.W.2d at 274; *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App.1997); T.C.A. § 40-35-303(b).

In sentencing Appellant, the trial court considered Appellant's criminal history, which included three Class A misdemeanors for trespassing, marijuana possession, and driving under the influence. The trial court specifically noted Appellant's lack of amenability to correction, as reflected by his failure to care for the cattle even after the initial charges were brought in general sessions court. The trial court felt that forty-five days in incarceration would "straighten [Appellant's] attitude out."

As stated above, a trial court has a great deal of flexibility when imposing a misdemeanor sentence. *Troutman*, 979 S.W.2d at 273. We conclude that the trial court considered the sentencing purposes and principles set out in our statutes. The trial court's imposition of the maximum sentence and ordering incarceration of forty-five days is supported by the record. Further, Appellant has not demonstrated on appeal that his sentence is improper. Accordingly, we affirm the sentence as imposed by the trial court.

However, we must remand the matter for correction of the judgment form.  At the hearing on the motion for new trial and reduction of sentence, the trial court indicated that Appellant would be eligible for work release status for the period of Monday through Friday from 8:00 a.m. to 4:00 p.m. during the service of his sentence.  There is no amended judgment in the record to reflect this addition.  When there is a conflict between the transcript and the judgment form, the transcript controls.  *See, e .g., State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991).  On remand, the trial court should enter a corrected judgment to reflect Appellant's eligibility for work release.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.  The matter is remanded to the trial court for entry of a corrected judgment.


_____
JERRY L. SMITH, JUDGE